SO ORDERED.

SIGNED this 21 day of June, 2016.



_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

IN RE:

CONNIE S. HARDY                                              Case No. 15-05431-5-JNC
                                                             CHAPTER 13
    DEBTOR

### ORDER REGARDING OBJECTION TO PLAN

The matter before the court is the Motion for Confirmation of Plan filed March 31, 2016 by the chapter 13 trustee (Dkt. 10; the "Motion to Confirm") and the Objection to Motion for Confirmation of Plan filed April 27, 2016 by 21st Mortgage Corporation (Dkt. 15; the "Objection"). A hearing on the matter took place on June 14, 2016, in Greenville, North Carolina. The chapter 13 trustee Richard M. Stearns (the "Trustee") appeared at the hearing, along with counsel for the debtor Connie S. Hardy ("Ms. Hardy" or the "Debtor") and counsel for 21st Mortgage Corporation (the "Creditor"). After consideration of the testimony, documentary evidence and arguments of counsel presented at hearing, and also the pleadings and other matters of record in the case, the court finds and determines as follows:

### BACKGROUND

Ms. Hardy filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code (Dkt. 1) on October 6, 2015 (the "Petition Date"). In the case schedules, she listed as an asset a

2013 Clayton Manufactured Home, Serial No. OHC022972NCAB (the "Manufactured Home"). Ms. Hardy resides in the Manufactured Home, which she acquired on July 29, 2013. On that date, she also executed a Consumer Loan Note, Security Agreement, and Disclosure Statement (the "Note") made to the Creditor in the original amount of $51,182.00, pledging the Manufactured Home as collateral. The resultant lien in favor of the Creditor was timely reflected on the Certificate of Title for the Manufactured Home issued by the North Carolina Department of Transportation, Division of Motor Vehicles (the "DMV"), as required under North Carolina law.

The Manufactured Home was delivered to its present location and "set up" soon after purchase. Its wheels were removed and its underpinnings were anchored to real property in accordance with local regulations and ordinances. However, the Manufactured Home was not permanently affixed to the lot, and remains personal property (a "mobile home") for lien recordation purposes under North Carolina law. The Debtor does not own the real estate under the Manufactured Home, and instead rents the lot from a third party. Consequently, the Creditor's lien against the Manufactured Home is properly perfected by the referenced DMV Certificate of Title pursuant to N.C. Gen. Stat. §§ 20-58 and 25-9-311(a)(2), and no recordation of a mortgage or deed of trust is necessary to protect and perfect its security interest in the collateral. The Creditor did not file a Uniform Commercial Code financing statement with the Office of the North Carolina Secretary of State pursuant to N.C. Gen. Stat. § 25-9-310(a), which is necessary under state law to perfect a lien in personal property of the Debtor other than the Manufactured Home and its permanently attached constituent parts.

Because the collateral of the Creditor is not a security interest in real estate, the amount of the Creditor's secured lien is limited to the value of the Manufactured Home as of the Petition Date. *See* 11 U.S.C. §§ 506(a) and 1322(b). The Creditor filed a timely proof of claim in the case

listing the $50,644.02 Petition Date outstanding balance of the Note as fully secured. The Debtor's chapter 13 plan, in contrast, listed the value of the Manufactured Home as of the Petition Date as $24,089.51. If the Debtor's assessment of worth was allowed, the balance of the Creditor's claim (presumably $27,092.49) would be treated as unsecured. The burden of persuasion shifted back to the Creditor, and because it timely objected to the proposed plan treatment of the claim, the court conducted an evidentiary hearing to determine the correct value of the Manufactured Home and corresponding security interest amount for purposes of "cram down" under 11 U.S.C. § 1325(a)(5)(B).

In its Objection, the Creditor asserted that the actual value of the Manufactured Home as of the Petition Date was equal to or exceeded $29,811.98, the average base value as reflected in the most pertinent NADA Appraisal Guide[1] (the "NADA Guide") for the same make and model as the Manufactured Home. It maintains that pursuant to 11 U.S.C. § 506(a), the actual Petition Date value, rather than Ms. Hardy's lower number, must be inserted into the chapter 13 plan before confirmation, and that her chapter 13 plan must be amended accordingly.

At the hearing, the Creditor presented a written appraisal (the "Appraisal") of the Manufactured Home dated June 9, 2016 prepared by Mr. Joseph P. Cordoni. The Appraisal was admitted into evidence for consideration by the court on the issue.[2] Mr. Cordoni was tendered to the court as an expert witness in the area of manufactured home appraisals, and his impressive credentials concerning manufactured home values and other aspects are reflected in the record. The Debtor stipulated to the tender of Mr. Cordoni as an expert for the stated purpose, and he was

---

[1] The National Automobile Dealers Association ("NADA") is a recognized trade group that publishes timely guidebooks estimating the value of various automobile or similar items including manufactured homes.

[2] The pertinent value of the Manufactured Home would actually be as of the Petition Date rather than June 9, 2016, but in the absence of evidence to the contrary, the court must presume that the values for the relative dates does not vary by a material amount.

allowed to testify on the subject of the value of the Manufactured Home. He also effectively testified as a fact witness on the present condition of the Manufactured Home and the cost of needed repairs as he had performed an on-site inspection of the Manufactured Home on the same day. The Appraisal and his testimony proposed a $33,100.00 present value for the Manufactured Home (the "Creditor Value").

At the hearing, Ms. Hardy conceded that the initial plan valuation of $24,089.51 was too low. She instead asserted the value reflected in the NADA Guide closest to the Petition Date of $29,811.98 (the "NADA Value") as the correct amount for chapter 13 plan purposes. She also presented into evidence (without objection) the 2014 and 2015 Johnston County ad valorem tax valuations as support for the NADA Value.[3] The parties stipulated that the NADA Value served as the "floor" and the Creditor Value functioned as the "ceiling" of valuation for hearing and plan purposes. Mr. Cordoni and Ms. Hardy also both testified concerning their respective observations on the need and expected cost of various minor repairs to the Manufactured Home that would be required before it could be sold to a hypothetical third party, materially agreeing on this aspect.

## DISCUSSION

The Debtor relies on the NADA Guide to establish the pertinent value for the Manufactured Home. In the typical case, the NADA Guide listing prevails, but that general average value is subject to further adjustment based upon evidence concerning the actual condition and need for repairs of the item. *See In re Marshall*, 181 B.R. 599 (Bankr. N.D. Ala. 1995). The NADA Guide therefore does not give an end number, but instead provides a presumptive baseline or "starting point" for use in determining the correct retail value of personal property for plan cram down

---

[3] Both years' tax values reflected values for the Manufactured Home slightly below the NADA Value, being $27,161 for 2015 and $28,590 for 2014.

purposes under 11 U.S.C. § 1325(a)(5). *See In re Russell*, 211 B.R. 12 (Bankr. E.D.N.C. 1997).

In the *Russell* case, Judge Small further held:

> Valuation for purposes of § 1325(a)(5)(B) is made *on a case by case basis*, but in this district, as a practical matter, the value is generally established at the meeting of creditors, and very few valuation hearings are held. The starting point for valuation of an automobile to be retained by a chapter 13 debtor has been the NADA retail value with adjustments agreed to by the debtor, the secured creditor and the chapter 13 trustee. *If the parties do not agree, a hearing is held, and the court determines the value* using a replacement standard, which in most cases is retail value.

*Id.* at 14 (emphasis added).

Consequently, in the absence of expert testimony, the court would ordinarily start with the NADA value less adjustment for costs of necessary repairs, and plus the value of additions to the vehicle or mobile home. Here, the NADA Value was admitted into evidence without objection, but because the parties in this case could not agree on actual value, the suggestion from the NADA Guide provides baseline evidence but is not binding or conclusive. As noted by Judge Small, where value is contested, a court is called upon to assess the retail value of the property at issue based upon the testimony, exhibits, and other evidence presented at an evidentiary hearing. Fortunately in this case, the court is presented with the rare luxury of a detailed written appraisal prepared and presented by an experienced and credible expert witness on the subject of manufactured home values in the eastern North Carolina market area, buttressed by his sworn testimony at the hearing.

Mr. Cordoni's testimony and report does not substantially deviate from the NADA Value, as he starts with a baseline of $27,900.00 after considering the Manufactured Home's make, year model, used state and general condition. His base price is then increased and decreased with line-by-line considerations of problems, additions and upgrades to the Manufactured Home and its components as carefully itemized in the Appraisal. Although not conclusive, the NADA Value continues to provide a check or balance on the expert baseline as a large deviation would require greater evidentiary scrutiny. Given the similarity of the NADA Value and the initial baseline from

the Appraisal, however, here the NADA Guide presumption is not so much overcome as supplemented. Accepting at face value the specific adjustments observed by Mr. Cordoni and listed in the Appraisal, the court finds that the Creditor Value is the most accurate starting point present value of the Manufactured Home for chapter 13 plan purposes in this case.

Nonetheless, like any generic NADA value for automobiles and mobile homes, the Creditor Value is subject to further adjustment. For example, the Appraisal did not take into account the cost of minor repairs that the parties agreed were necessary in the event of repossession and sale of the Manufactured Home. It assumes that all fixtures and items located next to (rather than in) the Manufactured Home are part of the Creditor's collateral package as well. The DMV Certificate of Title only perfects the lien on the Manufactured Home and its constituent permanently attached components and fixtures; it does not perfect a lien in assets of the Debtor either located outside of the Manufactured Home, or easily removed from and not permanently attached to it. Finally, the Appraisal included a few items that were part of the Manufactured Home when sold, and therefore should be included in the baseline price rather than tacked on as upgrades.

For the reasons stated above, the Creditor Value must be reduced and adjusted by the following line items taken from the list contained in the Appraisal, or as established in testimony:

   a. $221.00 for necessary repairs and leveling costs as largely conceded at the hearing;
   b. $192.00 and $280.00, respectively, as values for an outside porch and deck that are not subject to the Creditor's lien, as those items are not inside or affixed to the Manufactured Home, but stand free beside it;
   c. $333.00 and $354.00, respectively, as values for a refrigerator and free-standing stove/range located in the Manufactured Home, but not permanently attached to it;

    d. $568.00 for a third bathroom tub when the testimony of the parties agreed that the Manufactured Home only contains two tubs; and

    e. $92.00 as the value of two smoke detectors contained in the Manufactured Home when built.

The aggregate adjustment of the listed items is $2,040.00. Reducing the Creditor Value accordingly leaves $31,060.00, which amount is found by the court to be the value of the Manufactured Home at the time the petition was filed in this case, and therefore is the correct amount to be used for case plan and secured creditor valuation purposes.

The Creditor also objected to confirmation with respect to feasibility. Ms. Hardy's testimony on her employment history, efforts at cost-cutting, and efforts to find new employment satisfied concerns raised by the Creditor. Therefore, an amended plan with the revised value is deemed feasible if otherwise confirmable.

    IT IS THEREFORE ORDERED AND DECREED that:

    A. The Objection is sustained in part and denied in part as reflected above.

    B. Ms. Hardy is directed to amend her proposed plan to reflect a secured value for the Manufactured Home in the amount of $31,060.00 and the Creditor is deemed secured thereby. The amended plan shall be circulated and considered in the normal course of the case. The increased value of the Manufactured Home does not render the plan infeasible.

    C. All other proper plan objections, including feasibility for matters other the revised value of the Manufactured Home, are deemed reserved.

END OF DOCUMENT